United States District Court
Southern District of New York
_____

JUNG PAO,                                      11 Civ. 4765 (JGK)

                        Plaintiff,            MEMORANDUM OPINION AND
                                              ORDER
          - against -

THE CITY OF NEW YORK, ET AL.,

                        Defendants.
_____

JOHN G. KOELTL, District Judge:

     The Court has received the attached letter from the
plaintiff.

     Pursuant to the Court's previous Order, the stay that was
placed on this case has now been automatically lifted.  The
plaintiff represents that he has been unable to secure new
counsel.  **The plaintiff should enter promptly a notice
indicating that he is representing himself and the address where
papers can be delivered.**  The plaintiff may apply for an
extension of the discovery period if one is needed.  The
plaintiff may also contact the Office of Pro Se Litigation with
any questions.  The telephone number for the Office of Pro Se
Litigation is 212-805-0177.

     The plaintiff has also renewed his application for the
appointment of counsel.  The plaintiff's application for

appointment of counsel is **denied** at this time without prejudice
to renewal.

    For the Court to order the appointment of counsel, the
plaintiff must, as a threshold matter, demonstrate that her
claim has substance or a likelihood of success on the merits.
See Hodge v. Police Officers, 802 F.2d 58, 61-62 (2d Cir. 1986).
Only then can the Court consider the other factors appropriate
to determination of whether counsel should be appointed: the
"plaintiff's ability to obtain representation independently, and
[his] ability to handle the case without assistance in the light
of the required factual investigation, the complexity of the
legal issues, and the need for expertly conducted cross-
examination to test veracity."  Cooper v. A. Sargenti Co., 877
F.2d 170, 172 (2d Cir. 1989).

    At this point in the proceedings, the Court cannot
determine based on the record that the plaintiff's claims are
substantial or that he is likely to succeed on the merits.

**SO ORDERED.**

Dated:    New York, New York
          July 17, 2012

                              _____
                                    John G. Koeltl
                              United States District Judge

July 4 & 10, 2012

Hon. John G. Koeltl
United State District Court
Southern District of New York
500 Pearl St. #1030
New York, NY 10007



Re: 11-cv-04765s

Dear Judge Koeltl,

I am in receipt of your Memorandum Opinion and Order of June 25, 2012 in which I am to continue my search for counsel until July 13, 2012 and demonstrate sufficient merits in my case for the court's consideration of appointing counsel.

I discovered The Employment Law Group on Independence Day, spoke to its client services assistant about my case, and was offered a consultation for $495 per hour with the prospect of a $6,900 retainer to validate my claim. The earliest appointment they could offer me would be Tuesday, July 17, 2012. Meanwhile, I read about the two cases cited and in my own attempt write to address the merit issue by presenting the following summary of events in chronological order.

I came back to teach English as a second language (**ESL**) in 2007-8 at New York City Dept. of Education (NYCDOE) under a permanent ESL license for grades K-12. I received all satisfactory lesson and end-of-year ratings, and letters of commendation through 2009-10, including summer ESL assignments at two other schools, and was scheduled to receive my tenure at the end of that year.

The bullying of my older son intensified soon after he started middle school in the same school district in 2009-10 to the extent he feared returning to school. He has a documented social disability of which the school was aware from the start. Throughout the year I tried to advocate

for him by voicing our concerns first to the school administration and, when they failed, to central NYCDOE.

The administrators of my sons' schools, mine and that of the district office are connected at more than one level in addition to their geographic proximity. For example, the district superintendent's office is located in my older son's middle school, which is on the same street about ten blocks away from my school.

In Jan. '10, my middle school (in the same district) became non-compliant with the New York State ESL/Bilingual Education instructional mandate after it eliminated my licensed ESL teaching position for which I had been hushed on several occasions during staff development events within and outside school. Consequently, the English Language Learners who used to be under my care became under-served or un-served. It was not until October 2011 that the school hired a non-Asian female following my complaint in July 2011—still pending—to the Office of Civil Rights of the U.S. Dept. of Education.

At the same time I was reassigned to an increased work load about ten times as high teaching English Language Arts (**ELA**) Skills to primarily native-born American students without a license. I was not observed during this time; however, my tenure for ESL was denied without any reason in April 2010, less than two months away from being granted.

In 2010-11 I was terminated within four months. In Nov. 2010 a letter of reprimand was placed in my personnel file which stemmed from the "low" grades, e.g. 80-90%, and an exercise intended for higher order thinking skills that I gave to the students. In Dec. 2010 & Jan. 2011, the two defendants from the school administration nitpicked every aspect of my teaching during a "formal" and an "informal" observation, nor would they allow me to watch my colleagues teach, an invitation they had been sending to all teachers at the school. In Feb. 2011, they

terminated me on a 30-day notice on the grounds of "insubordination" after I questioned their practice but nonetheless followed their instructions before appealing to the then NYCDOE Chancellor. Around this time, word about my ouster spread to my son's school and the bullying continued with all its might where in April the school fended off our continual protests by sending the Dept. of Children and Family to "investigate" our "abuses" of our own children, which it later dismissed and became supportive at our meeting with the school administration in May 2011. Further, my son's school denied our repeated requests for a 504 accommodation plan and school transfer in the midst of frequent, increasingly physical bullying towards our older son, e.g. he was shoved to a corner in the hallway by three female students, giggling, and whacked on the knee cap by a racket in gym.

It was April 2011 that Stewart Lee Karlin filed a notice of claim on my behalf, which was later amended several times due to many clerical errors. In June a report was released to the NYCDOE Chancellor by a DOE agency without my knowledge that I behaved "inappropriately" to a student based on twisted facts and lies, which was later contested by her parent in my support.

In August 2011, a principal in another district apologetically turned me away after I disclosed my termination from my last job. In September through early November I was "hired" by two other NYCDOE principals, one of whom saw all my papers and petitioned for me, and the other, called me "a phenomenal teacher," but neither could keep me or pay me for the work I completed because of a block by NYCDOE to this day and a subsequent inquiry through the union has gone nowhere.

In mid-Nov. 2011, a first mediation meeting between the NYC and my lawyer did not end up in any improvement of my fate. In December I was repeatedly interrupted and stopped

3

during my presentation at an NYCDOE "hearing" to "review" my termination, resulting in my "walking out" and a "unanimous" decision to "uphold" my discontinuance <u>under my ESL license,</u> even though all documents in my school file regarding my ESL performance by the same and different administrators were positive. The NYCDOE again has not notified me to this day of this determination.

Throughout 2011-12 the retaliation has spread to both my children at their schools. For example, my younger son was ignored his urgent requests to use the bathroom twice in a row to the effect that he wet his pants and was humiliated after the school nurse "dressed him in white toilet tissues."

As the bullying of my older son by his peers continued in his final year at the middle school, two new administrators, supported by the district superintendent, collaborated in covering up an incident in Sept. 2011 where a full backpack was thrown at him in the locker room, cutting his arm, and retaliated against him by frequently pulling him out of classes and intimidating him, assigning him groundless demerits, telling lies about him to unsuspicious parents, keeping him from attending the senior trip, and ultimately manipulating his disability so that he was almost totally isolated and two of his "closest friends" turned against him towards June 2012 when he graduated.

In May 2012 the New York State Dept. of Education confirmed that my permanent ESL certification is "good forever" and I have full fingerprinting clearance for employment. But the "Employment Relations" Dept. of NYCDOE, formerly known as "Personnel Investigations," told me during my phone inquiry that I am on its "ineligible for hire list," still without any substantiation or written notification.

4

In June '12 I became aware that some of my former ESL students were not allowed to graduate, unable to visit their native country during summer vacation, and even face retention in the fall following the lack of qualified personnel and services in the past 2 ½ years at the school. I raised the issues and expressed my desire to help during a meeting with the district superintendent to no avail where she continued to deny the compliance issue at my school.

While I often pride myself on my analytical skills, which I strive to develop in my students, I leave it up to your honor to decipher the issues embedded in the above chronology. I therefore respectfully request again that this letter, together with my letter of June 18, 2012, be considered in the appointment of counsel.

Sincerely yours,

Jung Pao
Plaintiff
6150 220th St. 2FL
Oakland Gardens, NY 11364